STATE OF NORTH CAROLINA
v.
ROY LEE BYERS.
No. COA06-1704
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Sonya M. Calloway-Durham, for the State.
Jarvis John Edgerton, IV, for defendant-appellant.
JACKSON, Judge.
Roy Lee Byers ("defendant") was convicted of two counts of Taking Indecent Liberties with a Child and two counts of First Degree Statutory Sex Offense on 5 January 2006. The Indecent Liberties charges were consolidated into the Sex Offense charges for sentencing purposes, and defendant was sentenced to two consecutive terms of 335 to 411 months imprisonment in the North Carolina Department of Correction. At trial, the child victim's therapist testified that the child's behavior upon disclosing the alleged sexual abuse indicated the "he was saying something that was truthful." The therapist later testified that he had "not noticed any behavior that would indicate that [the child was] fabricating." Defendant argues that this testimony was inadmissible expert testimony vouching for the child's truthfulness. We hold that defendant has failed to demonstrate plain error.
By failing to object to testimony when it is first admitted, a defendant waives any possible objection to it. State v. Davis, 353 N.C. 1, 19, 539 S.E.2d 243, 256 (2000), cert. denied, 534 U.S. 839, 151 L. Ed. 2d 55 (2001). A criminal defendant may appeal a question that has not been otherwise preserved by specifically and distinctly contending the questioned judicial action amounted to plain error. See N.C. R. App. P. 10(c)(4) (2007). Under plain error analysis, if this Court is "not persuaded that the jury probably would have reached a different result had the alleged error not occurred, we will not award defendant a new trial." State v. Ridgeway, 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000) (citing State v. Bronson, 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992)).
Defendant did not object to the allegedly inadmissible testimony. Thus, he argues plain error. Presuming, without deciding, that the the rapist's testimony was inadmissible, we hold there would be no probable impact on the jury's decision in light of the otherwise overwhelming evidence of defendant's guilt.
The witnesses were sequestered during the trial, with only the mother being allowed in the courtroom while the child was testifying. The State first presented the child victim. Although the child clearly was uncomfortable with testifying, he eventually testified that defendant touched him in the back and on the knee with his penis. When asked if defendant touched the child's butt with his penis, the child continually said, "I want my mama." The child then testified that defendant touched his penis.
The next witness, the child's aunt, testified that when the child was about two and one-half years old, she saw him come into the living room after getting out of the bathtub, and go straight to defendant. "He turned around, spread his butt cheeks and [defendant] tapped his butt." She then testified that she had seen this occur two other times.
The child's mother testified next. She testified that the child started engaging in sexually related behavior around three to three and one-half years old. At that time, she noticed that he would play with his anus; he would stick his finger in it.
Towards the age of four, he started being sexual toward his younger brother. At first it was just touching his "brother's privates." She also caught the child after a bath trying to stick his penis in his brother's butt. When she asked if he had ever seen anybody do that, the child said that he had. One time after catching the child touching his brother, she asked him "Is somebody doing this to you, touching your privates[?] Is this  what's bringing this on? Why are you doing this?" He told her, yes When she asked who, he would not tell her; he put his head down and acted ashamed. Eventually, he told her that defendant had touched him "down there."
Most of the child's sexual behavior occurred after baths. Almost every time the child would visit defendant, he had been bathed and had his clothes changed; sometimes after only visiting for a couple of hours. The mother also testified that one time after a bath at her home, she saw the child run into the living room, bend over in front of defendant and that defendant "smacked him on the butt."
A law enforcement officer testified as to what the child's mother had told him during his investigation of the case. Much of his testimony corroborated the statements the mother made during her testimony.
The next witness was an investigator for the Cherokee County Department of Social Services ("DSS") who had been assigned to the child's case. She testified that she interviewed the child during one of his therapy sessions, during which he stated that defendant had "touched his butt and put his penis up his butt."
The child's therapist also testified. He stated that the child initially was brought in for oppositional and defiant behaviors. He also was very aggressive and somewhat sexually inappropriate. The mother had described problems with the child of a sexual nature. This sort of sexual behavior was not typical for a child of his age.
During one session, the therapist was complimenting the child for having done well in the past week, when the child "got real still and quite [sic] and his head dropped down and he wouldn't make eye contact . . . ." When asked if there was something he wanted to talk about, the child revealed that defendant had hurt him on his penis and his butt. The therapist also testified to the disclosure the child made during the interview with the DSS investigator that defendant put his penis in his butt.
Given the extensive testimony presented, we are not persuaded that the jury probably would have reached a different result had the alleged error not occurred.
No error.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).